ALMEDA WILBUR, Respondent, vs. JOHN P. JOHNSON, Appellant.

1. *Evidence—Leading questions, admission of no ground for reversal.*—The admission of leading questions is a matter resting very much in the sound discretion of the trial court, and cannot furnish ground for reversal.

2. *Statute of frauds—Promise to marry, etc.*—Whether a verbal promise to marry, when not to be performed within one year, is within the statute of frauds, *Quære?*

3. *Breach of promise—Suit for—Testimony as to finances of defendant.*—In suit for breach of promise, where plaintiff introduces no proof as to defendant's pecuniary condition, the latter cannot bring in such testimony on his own behalf to reduce the amount of damages.

4. *Breach of promise—Damage to feelings—Seduction, etc.*—Where a woman brings her action for breach of promise to marry, she may recover for injuries to her feelings, affections and wounded pride, as well as for the loss of marriage; and her seduction may be given in evidence to aggravate the damages.

5. *Breach of promise—Measure of damages, when left to the jury.*—In action for breach of promise, the measure of damages is a question for the sound discretion of the jury in each particular case ; and unless it appears that the jury were influenced by passion, prejudice or corruption, the verdict will generally be allowed to stand.

*Appeal from Jasper Court of Common Pleas.*

*J. M. Allen,* for Appellant.

I. Neither the contract nor the promise of marriage were in writing. The court manifestly erred therefore in permitting evidence relating thereto. (Pars. Cont., [5 ed.,] vol. 2, pp. 63, 64; Derby vs. Phelps, 2 N. H., 215.)

II. It was lawful for defendant to show his financial condition. (Sedg. Dam., [3 ed.] ch. 7, p. 219 ; Green vs. Spencer, 3 Mo., 172, [Houck's ed].

III. The evidence shows that the child was begotten before any valid promise of marriage, and that the seduction, if any, took place prior to any promise of marriage (Sedg. Dam., [3 ed.] ch. 24, p. 388, and authorities cited ; Green vs. Spencer, *supra;* Saner vs. Schulenberger, 3 Am. Rep., 174.)

IV. The evidence clearly showed that the only promise alleged to have been made by the defendant was made in consideration of sexual intercourse, and the consideration being immoral and against public policy, the contract or promise

founded thereon is void. (Sto. Cont., [3 ed.] ch. 18, § 541; Green vs. Spencer, *supra*; Sedg. Dam., [3 ed.] ch. 14, p. 388, and authorities cited.)

*E. J. Montague*, for Respondent.

I. Respondent had the right to bring the fact of seduction before the jury in aggravation of damages. (Sedg. Dam., [3 ed.] § 88, beginning on page 387.)

II. Appellants confound a promise to marry *inter sese* with an "agreement made in consideration of marriage." (2 Pars. Cont., 63, 64, and notes.) The statute of frauds obviously refers to "agreements made in consideration of marriage," which affect estates and property.

III. Appellant could not introduce his poverty as matter of affirmative defense. Resting his defense upon a denial of the promise to marry, he was not in a condition to confess and avoid with his evidence.

IV. The jury may take into consideration the injury to the feelings, affections and wounded pride of the plaintiff, and the loss of marriage. (Sedg. Dam., [3 ed.] 388.) In case of seduction, that fact may be shown in aggravation of damages.

WAGNER, Judge, delivered the opinion of the court.

The plaintiff brought her action in the court below, against the defendant, for a breach of marriage contract, and claimed $10,000 damages. On a trial of the issues framed, the jury awarded her $2,000, for which amount judgment was rendered and defendant appealed.

The evidence in reference to the contract was contradictory. Plaintiff was sworn in her own behalf, and she testified positively to the fact, that the contract of marriage was entered into between them, and that she was ready and willing to comply with it on her part, but that defendant had refused and married another woman. She was corroborated and sustained by other testimony, and the only evidence to the contrary was given by the defendant himself.

The verdict of the jury is conclusive on the question, and fully establishes the contract. In the course of the examination in chief, the plaintiff's counsel put to the witness direct or leading questions, to which the defendant objected. His objections were overruled, and he excepted, and now assigns the ruling of the court for error.

Whilst as a general rule, leading questions are not permissible in a direct examination, yet their admission is a matter resting very much in the sound discretion of the court, and it is too well settled to require the citation of any authority, that where they are allowed, their admissibility cannot be assigned for error, nor furnish any reason for a reversal. We cannot see that they were objectionable for any reason except that they were leading.

It seems that plaintiff was seduced by the defendant after the promise of marriage, and that a child was born in consequence of the illicit intercourse between the parties. When the plaintiff was being examined, she was permitted to testify in reference to defendant's demeanor towards the child, and his recognizing it as his; and it is insisted that this was erroneous, because no contract of marriage had been proved. But this is assuming entirely too much. The child was referred to in connection with the promises made by the defendant at different times, and this testimony constitutes a part of the narrative. It was called out incidentally, as showing his manner of treating the plaintiff and what he said on that occasion. Plaintiff said nothing more about the seduction, upon her direct examination, and the details of that disgusting transaction were left to be developed by the defendant on the cross-examination in all its grossness.

It is contended that the promise was void under the statute of frauds, because not made in writing, and the courts in England formerly so decided, but they have since taken a distinction between promises to marry and promises in consideration of marriage; this latter expression being the words used in the statute of frauds. In this country it has been held, that a promise to marry at the end of five years

was within that clause of the statute which requires that a promise not to be performed within one year from the making shall be in writing. If we adopt this latter conclusion, still the objection is not good, as the evidence clearly shows that the promise, if any was made, was to be performed in less than one year.

The defense offered to show defendant's pecuniary condition, and this was ruled out. I have no doubt about the correctness of the decision. Plaintiff had introduced no evidence in reference to the wealth of the defendant. The evidence was not therefore in rebuttal of any issue tendered on the other side; and it would be a strange proceeding to permit him to show his pecuniary circumstances, to decrease the damages occasioned by his own wrong. Under that view it would be only necessary for a man to show that he was very poor to escape with comparative impunity.

As to the instructions, the chief complaint is in giving the third in the series, for the plaintiff, and refusing the second one offered for the defendant. The third instruction given at plaintiff's request told the jury, that if they should find for the plaintiff, they should assess her damages at any sum not exceeding ten thousand dollars; and in determining the amount of damages which the plaintiff had sustained, they might take into consideration the injury done to her feelings, affections, and wounded pride, and the condition in which she was left. Defendant's instruction, which was refused, declared, that if the jury believed from the evidence, that the only promise made by the defendant was made in consideration that the plaintiff would permit the defendant to have sexual intercourse with her, then the jury should find for the defendant. In respect to this instruction, it is only necessary to say that the evidence did not support it, and therefore the court did not err in refusing to give it.

The instruction given for the plaintiff is unobjectionable. The action is given as an indemnity to the injured party for the loss she had sustained, and has always been held to embrace the injury to the feelings, affections and wounded pride

as well as the loss of marriage. (Sedg. Dam., 6 ed., 455.) And this court at an early day established the principle, that seduction might be given in evidence to aggravate the damages. (Green vs. Spencer, 3 Mo., 318 ; Hill vs. Maupin, *Id.*, 324.)

There is nothing in the point made, that the damages are excessive. From the nature of the case, it is impossible to fix the amount of compensation by any precise rule ; and as in tort, the measure of damages is a question for the sound discretion of the jury in each particular instance. (Sedg. *supra.*) Unless it can be shown that the jury were influenced by passion, prejudice or corruption, the verdict will generally be allowed to stand.

In my opinion the judgment should be affirmed ; the other judges concur except Judge Vories, who is absent.

JANUARY TERM, 1875, JEFFERSON CITY, IS CON. IN VOL. LIX.